NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY PANTO, on behalf of himself and all others similarly situated, | |
| Plaintiff(s), | Hon. Garrett E. Brown, Jr. |
| v. | Civil Action No. 10-4340 (GEB) |
| PROFESSIONAL BUREAU OF COLLECTIONS a/k/a PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC. and JOHN DOES 1-25, | **MEMORANDUM OPINION** |
| Defendant(s). | |

**BROWN, Chief Judge:**

This matter comes before the Court upon the motion for judgment on the pleadings (Doc. No. 9) filed by Defendant Professional Bureau of Collections a/k/a Professional Bureau of Collections of Maryland, Inc. (hereinafter "PBC") pursuant to Federal Rule of Civil Procedure 12(c). The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court will grant in part and deny in part the Defendant's motion for judgment on the pleadings.

**I.    BACKGROUND**

Plaintiff Anthony Panto brings this action on behalf of himself and all others similarly situated seeking damages, declaratory, and injunctive relief arising against PBC for unfair debt collection practices in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.

§ 1692 *et seq.*. (Compl. ¶ 1.) The following version of events assumes Plaintiff's allegations in the Complaint to be true because Defendant moves pursuant to Federal Rule of Civil Procedure 12(c), which is treated like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Borough of Sayreville v. Union Carbide Corp.*, 923 F. Supp. 671, 676 (D.N.J. 1996) (citing *Turbe v. Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).

According to the Complaint, on August 4, 2010, PBC mailed a letter to Plaintiff in an attempt to collect a debt Plaintiff allegedly owed to Household Finance Corporation. (*See* Compl. Ex. A.) On August 18, 2010, Plaintiff, through his attorney, sent a written notice, via facsimile, certified mail, and first class mail, to PBC disputing the alleged debt. (*See* Compl. Ex. B.) In this letter, Plaintiff, through his attorney, demanded verification of the alleged debt and instructed Defendant to "cease and desist" all collection efforts and communications with Plaintiff. On that same day, Plaintiff asserts that a PBC representative contacted his attorney in an attempt to collect the alleged debt. (Compl. ¶¶ 13-16.)

Plaintiff claims that PBC violated § 1692g(a)(3), (4), and (5) of the FDCPA because additional language included in the debt collection letter "overshadow[ed] and [stood] in sharp contrast to" the language required under such provisions, which also appears in the debt collection letter. (Compl. ¶ 24.) Plaintiff contends that "the least sophisticated consumer would be confused" with respect to his rights to dispute the alleged debt. (Compl. ¶ 22.) Plaintiff further claims that Defendant violated § 1692g(b) by contacting Plaintiff's attorney after Plaintiff disputed the alleged debt in writing. (Compl. ¶ 30.) As a result, Plaintiff filed this putative class action suit on August 23, 2010.

**II.     DISCUSSION**

"A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6)." *Borough of Sayreville*, 923 F. Supp. at 676 (citing *Turbe*, 938 F.2d at 428). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal quotations omitted). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Because this case requires the Court to construe a congressional statute, the basic principles of statutory construction apply. "The role of the courts in interpreting a statute is to give effect to Congress's intent." *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009) (citing *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001)). To discern Congress's intent, we must first consider the plain language of the statute. *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d at 254 (citing *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000)). If the statute's plain language is unambiguous, the Court need not look further. *Id.* However, "if the plain language fails to express Congress' intent unequivocally . . . we will examine the surrounding words and provisions in their context." *Id.* (citing *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004)). "[W]hen interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) (citing *United States v. State of Alaska*, 521 U.S. 1 (1997)). This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because the matter presents a federal question.

    A. *Violation of § 1692g(a)*

Section 1692g(a) sets forth the information that must be contained in a written notice to the debtor. *See* 15 U.S.C. § 1692g(a). Pursuant to this section, a debt collection notice must include the following information:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer

> and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5). The purpose of the FDCPA is to "eliminate abusive debt collection practices." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000). As a remedial statute, courts should "construe . . . [it] broadly, so as to effect its purpose." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). In order to comply with § 1692g(a), "more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354. FDCPA claims alleging unlawful lender-debtor communications are analyzed under the "least sophisticated debtor" standard. *See Rosenau*, 539 F.3d at 354. This standard is used in "order to effectuate the basic purpose of the FDCPA: . . . to protect all consumers, the gullible as well as the shrewd." *Rosenau*, 539 F.3d at 221 (citations omitted). This is a low standard; however, it does not allow liability for "bizarre or idiosyncratic interpretations." *Id.* Debtors are presumed to have a "basic level of understanding and a willingness to read with care." *Wilson*, 225 F.3d at 354-55. Finally, nothing should overshadow or contradict the validation notice required by the FDCPA; it should be sufficiently large and sufficiently prominent to be noticed. *Id.* at 355-56.

Here, Plaintiff does not dispute that the debt collection letter contained all of the statements required under § 1692g(a). Instead, Plaintiff asserts that additional language within the body of the debt collection letter overshadowed and contradicted the required validation provisions of § 1692g(a)(3) through (5). The debt collection letter includes the following statement in the body

of the letter: "If you are represented by an attorney in regards to this debt, print his or her name, address and phone number on the stub of this letter and return it to our office" (hereinafter, the "disputed language"). (*See* Compl. Ex. A.)  The required § 1692g(a) validation provisions appear in the same font style, size, and format as the remainder of the letter, in a separate paragraph after the signature line at the bottom of the letter. (*Id.*)  Plaintiff contends that the disputed language, in conjunction with the fact that the § 1692g(a) debt validation provisions appeared "outside" the body of letter, could easily confuse a consumer as to his rights in disputing the alleged debt. (Pl.'s Br. at 7.)  Plaintiff argues that the debt collection letter, as written, is capable of more than one interpretation, and that the disputed language could lead the least sophisticated consumer to believe that sending the attorney's contact information to Defendant was all that was required to make a valid dispute of the alleged debt. (*Id.*)  PBC, on the other hand, contends that the disputed language does not contradict or overshadow the § 1692g(a) provisions. (Def.'s Br. at 7.)  PBC maintains that the disputed language "only created an easy mechanism for Plaintiff to notify Defendant if he was represented by an attorney," since § 1692c(a)(2) prohibits a debt collector from communicating with a consumer if the debt collector is aware that the consumer is represented by an attorney. (*Id.*)

The Third Circuit has held that the "least sophisticated debtor" standard requires that the "notice must be in print sufficiently large to be read, and must be sufficiently prominent to be noticed." *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) (citing *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).  Therefore, a debt collection letter will not fulfill the requirements of § 1692g(a) "where the validation notice is printed on the back and the front of the letter does not contain any reference to the notice, or one in which the

6

validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector." *Wilson*, 225 F.3d at 355 (citing *Graziano*, 950 F.2d at 111; *Miller v. Payco-General Am. Credits, Inc.*, 945 F.2d 482, 484 (4th Cir. 1991)).

In *Graziano*, the debt collector sent a notice to the plaintiff stating the name of the creditor and amount of the unpaid debt in addition to threatening legal action within ten days if the debt was not resolved in that time. 950 F.2d at 109. At the bottom of the debt collection letter, the phrase "[s]ee reverse side for information regarding your legal rights" appeared. *Id.* The statements on the reverse informed the plaintiff of his rights to dispute the debt and request validation as required by § 1692g(a). *Id.* The Third Circuit found that a demand for payment within ten days was inconsistent with the § 1692g(a) notice, and that the demand effectively rendered the notice invalid. *Id.* The Third Circuit stated that the "least sophisticated debtor" could reasonably overlook his statutory rights under § 1692g(a) when faced with a demand for payment and a threat of immediate legal action if payment is not made within ten days. *Id.* The Third Circuit concluded that "a notice of rights, when presented in conjunction with such a contradictory demand, is not effectively communicated to the debtor." *Id.*

In contrast, in *Wilson*, the Third Circuit held that additional language in a debt collection letter did not overshadow or contradict the required validation notice under § 1692g(a). 225 F.3d at 351. The debt collection letter in *Wilson* stated that it "shall afford [the debtor] the opportunity to pay this bill immediately and avoid further action against you[.]" *Id.* (internal quotations omitted). The Court of Appeals' review of the "physical characteristics and form of the letter" established that the additional language did not overshadow or contradict the validation notice. *Id.* at 356. Specifically, the *Wilson* court noted that all of the text contained in the debt collection

letter was printed in the "same font, size and color type-face." *Id.* The court acknowledged that the validation provisions were found in the body of the letter, on the front page of the letter, directly below the language at issue. *Id.* The court concluded that the challenged language did not cause an actual or apparent contradiction with the validation notice. *Id.*[1] Rather, the court held that the debt collection letter merely provided the debtor with two options: (1) pay the debt immediately to avoid further action; or (2) dispute the debt according to the validation provision provided in the debt collection letter. *Id.* Under these circumstances, the court found that "the least sophisticated debtor would not be induced to overlook his statutory right to dispute the debt within thirty days." *Id.*

Here, a review of the physical characteristics of the debt collection letter reveals that the required validation provision is on the front of the letter, and is of the same font, size, and format as the rest of the letter. Although the validation provision appears in a separate paragraph after the signature line, and thus technically outside the body of the letter, its importance is not minimized by its placement in the letter. No emphasis is placed on any particular statement in the letter: the letter does not include any bold-faced text; no statements are typed in all-capital letters (aside from the Plaintiff's address at the top of the letter); and, no one section of the letter is sized differently than any other. (*See* Compl. Ex. A.) If anything, the conditional language ("Unless you notify this

---

[1] The Third Circuit in *Wilson* referred to a Seventh Circuit decision finding that there are "three possible means of inducing confusion: (1) an actual contradiction; (2) overshadowing; and (3) the 'failure to explain an apparent though not actual contradiction'—the third being the most common." *Wilson*, 225 F.3d at 355, n. 4 (discussing *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997)). The *Wilson* court noted that *Bartlett* required a "reconciling statement" explaining how two apparently contradicting rights fit together. *Id.* at 355 n.4. The Third Circuit did not find *Bartlett* dispositive, however, because it did not find that a contradiction, either actual or apparent, existed in the text of the debt collection letter at issue. *Id.* at 356 n.5. Consequently, *Wilson* did not decide whether the inclusion of a reconciling statement could cure an apparent contradiction, consistent with the requirements of § 1692g(a).

office within 30 days") and placement of the validation provision right after the signature line gives it slightly greater aesthetic emphasis than the rest of the letter.

Further, the disputed language does not make a contradictory demand, as did the disputed language in *Graziano*. In fact, there is nothing in the disputed language that conflicts or appears to conflict with the validation provision. The disputed language does not provide for any deadline that would run contrary to the thirty-day deadline found in the validation provision, and the disputed language does not threaten imminent legal action if payment is not made.

The Court finds the debt collection letter at issue here analogous to the collection letter in *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997). In *Terran*, the debt collection letter contained the following language, in the same print as the validation notice: "Unless an immediate telephone call is made to J. SCOTT . . ., we may find it necessary to recommend to our client that they proceed with legal action." 109 F.3d at 1430. The Ninth Circuit held that this language did not overshadow the validation provision. *Id.* at 1434. First, the Ninth Circuit observed that the text of the letter was uniform, with no added emphasis on any one particular statement. *Id.* Further, the Ninth Circuit found the fact that the language at issue did not contain a demand for payment particularly significant. *Id.* The Ninth Circuit stated that the request that the debtor telephone the debt collector did not "contradict the admonition" that the debtor had thirty days to dispute the debt. *Id.* The Ninth Circuit determined that the language at issue "simply encourag[ed] the debtor to communicate with the debt collection agency . . . [and did] not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." *Id.* Similarly, the disputed language here does not "threaten or encourage" Plaintiff to forgo his statutory right to dispute the alleged debt. In fact, the Court finds the disputed language to be less

9

difficult to understand than the language found not to be a violation of § 1692g(a) in *Terran* since the disputed language in this case does not use any language indicating an impending deadline. The disputed language merely requests that the Plaintiff alert the PBC to the fact that he is represented by an attorney.  As PBC correctly notes, § 1692c(a)(2) prohibits a debt collector from communicating with a consumer if the debt collector is aware that the consumer is represented by an attorney.  (Def.'s Br. at 7.)  Thus, the disputed language reflects PBC's attempt to comply with another provision of the FDCPA.

Plaintiff cites *Smith v. Paramount Recovery Systems* to support his contention that Defendant's debt collection letter violated § 1692g(a).  There, the debt collection letter contained the following statement: "[a]ll questions regarding insurance filings should be directed to your insurance company." *Smith v. Paramount Recovery Sys.*, Civ. No. 08-1937, 2008 WL 4951227, at *3 (D.N.J. Nov. 18, 2008).  The court held that "in the medical debt collection context where multiple insurers appear on a debt verification letter," the statement at issue was misleading because it was capable of more than one interpretation. *Id.* at *5.  The court found that, under the least sophisticated consumer standard, a debtor "confronted with two parties to contest a debt with, may believe it can resolve the debt collection by pursuing it with an insurer" and, therefore, that the defendant had violated § 1692g(a). *Id.*  The disputed language here is distinguishable from the debt collection letter in *Smith*.  The disputed language here does not suggest an alternate method of disputing the alleged debt; the disputed language merely requests additional information from the Plaintiff.

This Court finds that the disputed language does not overshadow, contradict, or appear to contradict the debt collection letter's FDCPA validation notice.  Further, the disputed language

does not contradict the rights provided in the required validation notice. Therefore, the Court will grant PBC's motion for judgment on the pleadings with respect to Plaintiff's debt collection letter claim.

    *B. Violation of § 1692g(b)*

Section 1692g(b) of the FDCPA requires a debt collector to cease collection of a debt once a consumer disputes the debt until the debt collector receives verification of the debt. This section provides as follows:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.

15 U.S.C. § 1692g(b). After receiving the initial debt collection letter, Plaintiff's attorney sent a letter to Defendant disputing the alleged debt. (Compl. ¶ 14.) Plaintiff contends that Defendant thereafter violated § 1692g(b) when a representative contacted Plaintiff's attorney via telephone in an attempt to collect the alleged debt prior to Defendant obtaining the requested verifications of the alleged debt. (Compl. ¶ 15-16, Pl.'s Br. at 9.) Defendant argues that § 1692g(b) solely prohibits communication with the consumer, not the consumer's counsel. (Def.'s Br. at 8.) In contrast, Plaintiff asserts that, for purposes of § 1692g(b), a consumer and his attorney are "one and the same," and, therefore, a communication by a debt collector to a consumer's attorney is actionable

11

under the FDCPA.  (Pl.'s Br. at 9.)

The Court notes that at the time the parties submitted their briefs, the Third Circuit had not determined whether a communication from a debt collector to a consumer's attorney was actionable under the FDCPA; thus, both parties' arguments focused on cases decided in other circuits and other district courts within the Third Circuit.  None of these decisions are binding on this Court.  However, since the parties submitted their briefs, the Third Circuit decided this very issue in *Allen v. Lasalle Bank, N.A.*, concluding that such communications are actionable.  629 F.3d 364, 368 (3d Cir. 2011).  There, similar to the present case, defendants argued that communications from a debt collector to a consumer's attorney were not covered by the FDCPA. *Id.* at 366.  The *Allen* court pointed to Congress's explicit intent in enacting the FDCPA: "'to eliminate abusive debt collection practices by debt collectors[.]'" *Id.* at 367.  The court then turned to the language of the statute and found that nothing in the FDCPA explicitly exempts communications to an attorney from regulation under the statute  *Id.* at 368.  The court noted that the scope of the FDCPA is "unquestionably" broad, and, further, that the definition of "communication" under the FDCPA is expansive. *Id.*  Indeed, a "communication" is defined as "the conveying of information regarding a debt directly or *indirectly* to any person through any medium."  15 U.S.C. § 1692a(2) (emphasis added).  The *Allen* court held that "a communication to a consumer's attorney is undoubtedly an indirect communication to the consumer." *Id.* (citing *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 773 (7th Cir. 2007); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007)).  The court further explained that the deterrent effect of strict liability under the FDCPA would be undermined if an "otherwise improper communication would escape FDCPA liability simply because that communication was directed to

a consumer's attorney[.]" *Id.*  Although the Third Circuit decided *Allen* under § 1692f(1), that court's reasoning applies with the same force to Plaintiff's claim under § 1692g(b), because the definition of "communication" found in § 1692a(2) is applicable to both §§ 1692g(b) and 1692f(1). In light of *Allen*, the Court concludes that a communication by the debt collector to the consumer's attorney is actionable under the FDCPA, and the Court further concludes that Plaintiff has pled sufficient facts to state a claim for relief under § 1692g(b).  Thus, the Court will deny PBC's motion for judgment on the pleadings with respect to Plaintiff's allegation of a violation of § 1692g(b).

### III. CONCLUSION

For the aforementioned reasons, the Court will grant in part and deny in part PBC's motion for judgment on the pleadings.  (Doc. No. 9.)  An appropriate form of order accompanies this Memorandum Opinion.

Dated: March 7, 2011

                                      s/ Garrett E. Brown, Jr.
                              GARRETT E. BROWN, JR., U.S.D.J.